## JOHN M. FRIES v. G. W. ENNIS ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued January 21, 1890—Decided February 3, 1890.

1. Where a retiring member of a partnership deposits with the new firm a sum of money which it is agreed between him and the members of the new firm shall be appropriated to his share of the liabilities of the old firm, the fund becomes a trust fund for the object specified.
2. The right of a creditor of the old firm to be paid out of the assets of the new firm in the hands of a receiver, to the extent of the fund so held in trust, is not affected by the equities of the partners in the new firm, or by a bill in equity between them for their adjustment.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 154 July Term 1889, Sup. Ct.; court below, No. 914 December Term 1885, C. P. No. 3, in Equity.

### Statement of Facts.

On March 3, 1887, John M. Fries filed a bill in equity against George W. Ennis and Frank B. Thompson, which as amended averred the purchase by the plaintiff on July 13, 1885, of the interest of Frank B. Thompson in the business of George W. Ennis & Co.; that he was induced to make the purchase of said interest by certain misrepresentations made by the defendants as to the business and financial condition of the firm, and since the beginning of the new firm the said Ennis had been guilty of conduct prejudicial to its success, and troubles and dissensions had arisen, etc.; praying for a dissolution of the firm, for an injunction against collecting and disposing of its assets, and for the appointment of a receiver. A receiver was appointed as prayed for.

Answers having been filed and issue joined, the cause was referred to a master and examiner, before whom it was pending when the receiver filed his account of the conversion of the assets, which account was referred for distribution to *Mr. Wm. M. Mervine*, as auditor.

Before the auditor, James H. Clarke, a creditor of what was known as the old firm of George W. Ennis & Co., composed of George W. Ennis and Frank B. Thompson, presented for payment, out of the assets accounted for by the receiver, certain judgments held by him against the old firm amounting together to $12,731.92. It was shown that on July 13, 1885, when the new firm was formed, the partners in which were then George W. Ennis and John M. Fries, the latter purchasing the interest of Frank B. Thompson in the old firm, the members of both firms executed an agreement which recited certain actions brought or threatened against the firm of George W. Ennis & Co., particularly those by James H. Clarke; that it was the intention that all the liabilities of the old firm, except a certain bank indebtedness, should be paid by the old firm, and the new firm should be protected therefrom; that the better to protect the new firm from such liabilities, " the said Frank B. Thompson has this day deposited with the 'new firm' of George W. Ennis & Co. the sum of $12,551.81, to be applied, used and disposed of as hereinafter specified;" that it was therefore mutually agreed that Geo. W. Ennis should be responsible for and pay the one half of the liabilities of the old firm, with the exception stated, and the other half should be

payable by Frank B. Thompson and be deducted from the said sum deposited by him, and that in case said sum should be insufficient for the payment thereof, the said Frank Thompson should deposit a further amount of money sufficient to fully pay and discharge his portion.

The auditor, considering the testimony and examining Wynn v. Wood, 97 Pa. 216; Kountz v. Holthouse, 85 Pa. 237; Negley v. Lindsay, 67 Pa. 217; Coover's App., 29 Pa. 14; Richard v. Allen, 117 Pa. 199; Bullitt v. M. E. Church, 26 Pa. 110; Frow's Est., 73 Pa. 459; Torrens v. Campbell, 74 Pa. 470; Zell's App., 111 Pa. 533, was of the opinion that the new firm was charged specifically with the claimant's demand, and reported a distribution awarding to said claim the sum of $14,087.54, and to the receiver the balance of the fund, $36,658.64, after payment of costs and certain other claims, " pending the decision of the court in the equity branch of this case."

To the report of the auditor, John M. Fries, the plaintiff in the bill, filed exceptions alleging that the auditor erred, inter alia:

1. In finding that the deposit by Frank B. Thompson was a trust fund for the payment of the debts due by the old firm.

2. In awarding payment to James H. Clarke of the sum of $14,087.54, although the deposit was originally but $12,551.82.

7. In not reporting that Thompson sold, not his interest in the surplus after payment of debts, but his interest in the firm and its assets, clear of all liability for debts; and that the creditors of the old firm were thereby barred of any equitable claim through him on said assets, and were turned over to the very ample consideration which he received in cash for said assets.

8. In not reporting that the contemporaneous sales by Thompson of his interest to John M. Fries, and by Ennis of his interest to the new firm, passed the title to the whole assets of the old firm, and that the creditors of the old firm after said sales could not follow the assets which were from that time replaced by the consideration given for them.

Said exceptions having been argued before the court in banc, on July 6, 1889, the following opinion was filed, FINLETTER, P. J.

Opinion of Court below.

On the thirteenth day of July, 1885, the firm of George W. Ennis & Co., was dissolved by Frank B. Thompson selling his interest to John M. Fries, for $60,000. Thereupon a new firm was constituted by Ennis and Fries, under the same title. At this time there were debts due by the old firm, in which all the parties were interested, and therefore the tripartite contract was executed by Fries, Ennis and Thompson. It sets forth that "it is the intention of the parties that all debts owing by the old firm shall be paid; that the new firm shall not be responsible for said debts, but shall be protected therefrom; and to protect the said new firm from loss by reason of said debts, Frank B. Thompson has deposited with the new firm $12,551.81, to be applied and disposed of as hereinafter provided."

This money was to be paid to the creditors of the old firm by the new firm; and for this purpose was received by them, and was to be paid out by check drawn by Fries in the name of the firm. It was also to bear interest from July 1, 1886, and now with the interest amounts to $14,684.67, a larger sum than was awarded to the creditors by the auditor.

All the parties were interested in and would have been benefited by a faithful performance of this contract. The creditors would be paid, Ennis and Thompson would be relieved of the indebtedness, and the new firm would be freed from annoyance and loss. In this Fries would be specially benefited.

If the new firm had continued to the present time, there can be no doubt that the creditors of the old firm could have compelled it to pay their debts, and Thompson could have rightfully claimed any sum which was left after payment of the debts. This was provided for in the contract. The fund was therefore held by the new firm in trust for the liquidation of the debts, and also in trust for Frank B. Thompson, as to the residue.

It is obvious that this statement relieves the case from all questions of the liabilities and equities of partners, and the rights of creditors upon the assets. All such questions disappear in the character of the fund, and the duties which arise from that character. The fund becomes a special deposit, to be appropriated to a special object. This makes it a trust fund, and those who hold it, trustees, for the objects of the trust. If it be appropriated to the payment of the debts, the duties of

the trustees are fulfilled, and the purpose of the trust accomplished. If it be retained by the new firm, the rights of the creditors and the old firm and its individual members are disregarded by the trustees. If it be retained by Fries for his individual benefit, upon any pretence, it is a violation of trust, and a wrong to all interested.

On March 3, 1887, John M. Fries filed his bill praying for a dissolution of the copartnership and the appointment of a receiver. A receiver was appointed, who converted the assets into money. The auditor has reported for distribution $52,246.18, in which is included the fund of $12,551.81, which must be considered, for the purposes of this case, as in the hands of Fries and Ennis, to be appropriated to the objects for which it was given, and for which it was received by them.

On September 22, 1887, John M. Fries filed an amended bill, in which he averred that Ennis and Thompson had conspired together to misrepresent the value of Thompson's interest in the old firm, whereby he was defrauded out of a large sum of money. For this reason he claims the $12,551.81, and contends that the creditors of Thompson and Ennis are subject to all the equities which arise from the conspiracy, and have no right to the fund until those equities are satisfied.

If Thompson or Ennis had any interest in this fund, it might be conceded that the equities arising out of their alleged fraud upon Fries would prevent them from receiving it. But neither of them has any legal claim upon the fund. They dedicated it to a specific purpose, and until that purpose is accomplished they can have no claim upon it. They have made no objection to the distribution made by the auditor. The creditors claim this fund, not by reason of any interest they have in the old firm, or in the equitable rights of the individuals of either or both firms, but as a specific deposit to be paid to them in liquidation of their just claims.

In no event can Fries arrest the distribution, unless he clearly shows that his rights will be jeoparded thereby. It is not enough to aver that he has been cheated by Ennis and Thompson. He must show how, and to what extent he has suffered, and how the distribution will affect his interest. This he has not done. In this connection it is proper to observe that he remained in business with Ennis nearly two years, without any

Arguments.

allegation of fraud, and during that time was in active management of the business. And when he and his partner quarreled, and he filed his bill for a receiver, there was no charge of fraud. It was not until September, 1887, that he alleged conspiracy, and then his father, as receiver, had control of all the assets of the partnership. We are not aware that any effort has been made to establish the fraud and its extent. It remains simply an allegation and a denial.

The sum for distribution to the partners, Ennis and Fries, exclusive of the $12,551.81, is $36,658.64. One half of this sum belongs to Ennis, and it is awarded by the auditor [sic] to Aaron Fries, the receiver, to await the decision of the court in the equity branch of this case. There is, then, the sum of $18,328.32 to meet the allegations of fraud. In addition, there is the right to recover against Thompson.

We have had an extensive knowledge of the transactions of all the parties, their allegations and proofs. We are not convinced that $18,328.32 will not amply repay any loss which has arisen from the misrepresentation of the value of Thompson's interest. We cannot, therefore, see that Fries's rights will be jeoparded by the distribution to the creditors.

The exceptions are dismissed and the report of the auditor confirmed.

—Thereupon the exceptant took this appeal, specifying that the court erred in dismissing the exceptions filed to the auditor's report, and in confirming said report.

*Mr. Henry C. Terry* (with him *Mr. George H. Earle, Jr.,* and *Mr. Richard P. White*), for the appellant.

Counsel cited: Ex parte Peele, 6 Ves. 603; Coover's App., 29 Pa. 14; Lindley on Partnership, 205–6; Kountz v. Holthouse, 85 Pa. 237; Gray v. Pearson, L. R. 5 C. P. 668; In re Rotherham, 25 Ch. D. 111.

*Mr. William W. Ker* (with him *Mr. George S. Graham*), for Ennis and Thompson, appellees.

*Mr. Pierce Archer* (with him *Mr. Jno. S. McKinlay*), for James H. Clarke, appellee.

Counsel cited: Negley v. Lindsay, 67 Pa. 217; Townsend

Syllabus.

v. Long, 77 Pa. 149; White v. Thielens, 106 Pa. 176; Bigelow on Fraud, ed. 1888, § 12; Lucas v. Laws, 27 Pa. 212; and other cases cited by the auditor in his report.

PER CURIAM:

This case has been so fully discussed by the learned auditor and the court below, that any further elaboration of it is unnecessary. After paying the creditors, the balance of the money is awarded to the receiver to hold the same until the bill in equity can be disposed of and the rights of the partners ascertained. As this may take considerable time, judging from the manner in which the equity suit has been heretofore conducted, we think the fund, $36,658.64, should be invested under the order of the court below, or deposited where it will draw interest, if it has not already been done.

　　　　The decree is affirmed and the appeal dismissed
　　　　　　at the costs of the appellants.